UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Nelson Israel Pomaquiza Sumba,
Petitioner

v.

Case No. 26-cv-700-SM-TSM
Opinion No. 2026 DNH 153

Christopher Brackett, Superintendent of the Strafford County Department of Corrections, et al.,
Respondents

**O R D E R**

Nelson Israel Pomaquiza Sumba is a civil immigration detainee from Ecuador. He filed this habeas corpus petition seeking a court order directing respondents to release him immediately from ICE custody or, in the alternative, an order directing the federal respondents to provide him with a prompt, constitutionally adequate bond hearing before a neutral decisionmaker. By order dated September 21, 2026, the court granted the petition, in part, and ordered the government to provide petitioner with a constitutionally adequate bond hearing.

That hearing took place before an immigration judge on September 25, 2026, at which the IJ concluded that the government had carried its burden of demonstrating that

petitioner is a flight risk. Accordingly, bond was denied. In response, petitioner filed, with this court, an "Emergency Motion for Review of Bond Denial and for Immediate Habeas Relief" (document no. 11). In it, he seeks expedited review of the constitutionality of his bond hearing and an order directing the government to immediately release him from custody, subject to reasonable conditions of supervision. He has not sought an evidentiary hearing or oral argument on that motion. The government objects to the relief sought.

For the reasons discussed, petitioner's motion is denied.

## Background

On August 26, 2026, ICE Enforcement and Removal Operations officers were conducting an operation in Brockton, Massachusetts. They seem to have been targeting a specific individual and were surveilling that individual's residence. During the course of that surveillance, the officers' attention was drawn to petitioner, who was a passenger in a car near the target's residence and appeared to be waiting for the target. The officers, who were in uniform and/or displaying badges, attempted to engage with petitioner, but he fled. According to the Form I-213 narrative of the incident, the relevant facts are as follows:

> ERO officers set up at the last known address of the initial criminal alien target at 256 Court Street, Brockton, MA. Officers were wearing exterior armor, or with badges, police markings or equipment prominently displayed. At that time, ERO Officers observed another vehicle of interest that had pulled in at the target location and appeared to be waiting for the target due to its proximity to the target residence. ERO Officers <u>conducted a vehicle stop</u> and identified themselves as "Police/ICE." ERO officers encountered two male occupants at that time, one of which was POMAQUIZA. POMAQUIZA immediately attempted to flee from the vehicle stop.
>
> POMAQUIZA exited the passenger door of the vehicle and attempted to flee on foot before the vehicle he was in came to a stop. ERO officers were forced to physically catch and restrain POMAQUIZA. POMAQUIZA refused to identify himself and had to be identified by the other occupant of the vehicle. This identity was confirmed through records checks. As POMAQUIZA is an alien illegally present in the United States and was clearly a flight risk due to his actions and was likely to attempt to abscond prior to a warrant being obtained, a warrantless arrest was conducted.

Form I-213 Narrative (document no. 11-1) at 2 (emphasis supplied). Petitioner says that vehicle stop may have been unlawful and "raises serious Fourth Amendment questions." Following his arrest, petitioner was eventually transported to the Strafford County Correctional Facility in Dover, New Hampshire, where he remains in custody.

On August 31, 2026, petitioner filed a Petition for Writ of Habeas Corpus seeking an order compelling respondents to release him immediately from custody or, in the alternative, to provide

him with a bond hearing. That petition was granted, in part, and the court directed the federal respondents to provide petitioner with a constitutionally adequate bond hearing.

That bond hearing took place on September 25, 2026. In a brief written order, the presiding immigration judge denied bond, concluding that:

> DHS has established, by a preponderance of the evidence, that the Respondent presents a risk of flight. Considering the factors discussed on the record, individually and cumulatively, the Court finds that continued detention is warranted. Accordingly, the Respondent's request for release on bond is denied.

Order of Immigration Judge (document no. 10-1) (emphasis supplied). The government has filed the audio recording of the underlying bond hearing, which the court has reviewed. Exhibit 1, Conventionally Filed Audio Recording (document no. 12-1).

## Discussion

I. Exhaustion and Jurisdiction.

This court has previously discussed - at length - the scope of its jurisdiction under 28 U.S.C. § 2241, why the provisions of 8 U.S.C. § 1226(e) do not deprive it of jurisdiction to entertain petitioner's challenge to the constitutional sufficiency of his bond hearing, and why petitioner need not,

under the circumstances presented, exhaust available administrative remedies (by, for example, appealing the denial of bond to the Board of Immigration Appeals). See, e.g., Macedo v. Wesling, No. 1:26-CV-36-JL-TSM, 2026 WL 1413156 (D.N.H. May 20, 2026); Makuraza v. Wesling, No. 1:26-CV-122-JL-AJ, 2026 WL 1068066 (D.N.H. Apr. 20, 2026); Mayancela Mayancela v. FCI Berlin, Warden, No. 25-CV-348-LM-TSM, 2025 WL 3215638 (D.N.H. Nov. 18, 2025).

Those discussions need not be repeated. It is sufficient to note that the court concludes that it has jurisdiction over petitioner's challenge to his bond hearing. To prevail, petitioner must demonstrate that the "IJ failed to place the burden of proof on the Government to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. To make this showing, he can either point to the language of the IJ's opinion or demonstrate that the evidence itself could not – as a matter of law – have supported the IJ's decision to deny bond." Mayancela Mayancela, 2025 WL 3215638, at *5 (citations and internal punctuation omitted). See generally Gupta v. Brackett, No. 1:26-CV-207-PB-TSM, 2026 WL 1734839, at *2 (D.N.H. June 16, 2026) ("Although § 1226(e) strips the Court of the power to review an IJ's discretionary decision to detain a person subject to removal

proceedings, it does not restrict the Court's authority to review claims that the person is being detained in violation of his constitutional rights. Nor does it bar judicial review of other questions of law that are embedded in a detention determination.") (citations omitted; emphasis supplied).

II. The Merits of Petitioner's Challenge.

A. Consideration of the Form I-213.

Petitioner does not seek immediate release based upon the potential illegality or unconstitutionality of his arrest. See generally, Rodrigues De Oliveira v. Joyce, No. 2:25-CV-00291-LEW, 2025 WL 1826118, at *5 (D. Me. July 2, 2025) ("Petitioner's argument that an illegal arrest automatically results in an illegal detention is misguided. . . . [T]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding. Thus, even if Petitioner's initial arrest was unlawful, her detention pending removal may stand.") (citations omitted); I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1039-40 (1984).

Instead, petitioner alleges that evidence upon which the IJ relied may have been obtained in violation of the Fourth Amendment and, therefore, the exclusionary rule probably should have precluded the IJ from considering it. See, e.g., Motion

for Emergency Relief (document no. 11) at 3 ("The government's own I-213 reveals a surveillance-based encounter with a non-target and raises serious Fourth Amendment questions that undermine reliance on the [petitioner's] alleged 'flight.'") (emphasis supplied). See also Id. at 2 (asserting that the I-213 report "raise[s] serious questions concerning . . . the constitutional circumstances surrounding the initial seizure."); id. at 3 ("What the report does not identify is any individualized fact that caused officers to suspect Petitioner himself of an immigration violation before officers initiated the encounter. Petitioner was not the target of the operation."). In short, petitioner asserts that, "The Fourth Amendment requires individualized justification for a seizure. Mere proximity to a target residence or association with persons present near that location does not itself provide reasonable suspicion that an individual is unlawfully present in the United States." Id. at 4.

Implicit in that argument is the claim that if the evidence of petitioner's flight from officers had been acquired in violation of the Fourth Amendment, and if such evidence had been excluded under the exclusionary rule, the balance of the evidence presented to the IJ would have been insufficient, as a

matter of law, to support a finding, by a preponderance of the evidence, that petitioner is a flight risk.

The problem is this: More than forty years ago, the Supreme Court held that the exclusionary rule does not apply to civil deportation hearings. Lopez-Mendoza, 468 U.S. at 1034 ("We hold that the exclusionary rule need not be applied in [a civil deportation] proceeding."). See also 8 C.F.R. § 1003.19(d) ("The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service.").

To be sure, deportation proceedings (which were the subject of the Court's opinion in Lopez-Mendoza) and bond hearings are distinct proceedings. See, e.g., 8 C.F.R. § 1003.19(d). Consequently, they may warrant differing treatment. But petitioner does not argue that the reasoning in Lopez-Mendoza does not apply with equal force to bond hearings. That is, he has not shown that the exclusionary rule does apply civil immigration bond hearings and, therefore, that evidence (arguably) obtained in violation of the Fourth Amendment should

have been excluded (petitioner does not discuss the Court's opinion in Lopez-Mendoza).[1]

B. The IJ's Balancing of Factors.

Assuming the accounts contained in the Form I-213 (including reports of petitioner's alleged flight from officers) were properly before the IJ, petitioner asserts that "the disputed ICE encounter does not outweigh the substantial evidence demonstrating that the Petitioner is likely to appear throughout his immigration proceedings." Emergency Motion at 11. As this court (Laplante, J.) recently noted, petitioner's burden is a substantial one:

> Although this court has authority to consider [petitioner's] claim, that authority is limited. To obtain habeas relief, a petitioner must show that the Immigration Judge failed to place the burden of proof on the government as required by Hernandez-Lara. To make this showing, a noncitizen must either point to the language of the immigration judge's opinion or demonstrate that the evidence itself could not — as a matter of law — have supported the immigration judge's decision to deny bond.

---

[1] The Court's opinion in Lopez-Mendoza does admit of some potential exceptions for "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." See Id. at 1050-51. Petitioner has not shown that such exceptional circumstances are present in this case.

Mbiya v. Doe, No. 26-cv-467-JL-TSM, 2026 WL 2098764 at *4 (D.N.H. July 21, 2026) (citations and internal punctuation omitted) (emphasis supplied). Moreover, "while IJs generally must sufficiently explain their reasoning to permit appellate or judicial review of their decisions, an IJ need not discuss ad nauseam every piece of evidence nor spell out every last detail of her reasoning where the logical underpinnings are clear from the record." Lopez Flores v. Brackett, No. 1:26-CV-94-PB-TSM, 2026 WL 1179959, at *4 (D.N.H. Apr. 30, 2026) (citations and internal punctuation omitted). In short, the IJ's weighing of the evidence presented is entitled to substantial deference.

Here, petitioner asserts that the evidence presented to the IJ was not, as a matter of law, sufficient to warrant the denial of bond. To prevail, he must bear a significant burden. See, e.g., Acero v. FCI Berlin, Acting Warden, No. 26-cv-159-LM-AJ, 2026 WL 821896 at *3 (D.N.H. March 25, 2026) ("To make this showing, [petitioner must] demonstrate that the evidence adduced at the bond hearing was insufficient as a matter of law for a reasonable IJ to find flight risk by a preponderance of the evidence."); Timbigamba v. FCI Berlin, Warden, 836 F. Supp. 3d 430, 442 (D.N.H. 2026) ("One way to make this showing is by establishing that the evidence before the IJ was such that no reasonable IJ could have concluded that the government met its

burden of demonstrating dangerousness or flight risk to the requisite degree of certainty.") (citations and internal punctuation omitted).

Petitioner has not made that showing. Reasonable minds can certainly disagree about the weight the IJ afforded to the various factors that counselled in favor of detention and those that counselled in favor of release on bond. There was, to be sure, substantial evidence before the IJ supporting petitioner's claim that he posed little flight risk (or that any such risk could likely be mitigated by requiring an appropriate bond). Critically, however, there was also substantial evidence that would permit a reasonable jurist to conclude, by a preponderance, that he posed a flight risk (i.e., petitioner's flight when confronted by ICE officers and that, prior to his arrest, petitioner had not filed any application(s) for relief from removal, etc.). See Government Objection (document no. 12) at 8. See generally Matter of R-A-V-P, 27 I. & N. Dec. 803, 805 (BIA 2020) (holding that, an "Immigration Judge may also consider the likelihood that relief from removal will be granted in determining whether an alien warrants bond," and noting that "an alien with a greater likelihood of being granted relief has a stronger motivation to appear for a hearing than one who has less potential to obtain relief."). See also Matter of M-S-V,

30 I. & N. Dec. 130, 135 (BIA 2026) (same). That this court may have made a different bond determination based upon the evidence presented is of no moment.

Finally, the court notes that recent decisions from this court granting a petitioner's due process challenge to a bond hearing have been grounded on a finding that the IJ fundamentally misunderstood or mischaracterized allegedly inculpatory evidence. See, e.g., Mbiya v. Doe, No. 26-cv-00467-JL-TSM, 2026 WL 2098764 (D.N.H. July 21, 2026); Timbigamba v. FCI Berlin, No. 26-cv-281-LM-AJ, 2026 WL 1470320 (D.N.H. May 26, 2026); Singh v. Strafford County Department of Corrections, No. 25-cv-268-SE-TSM, 2026 WL 2070274 (D.N.H. July 17, 2026). Nothing suggests the IJ committed such a fundamental error in this case. Rather, petitioner challenges the weight the IJ afforded to various pieces of evidence presented at the bond hearing. But, ascribing particular weight to conflicting evidence - assuming that evidence is properly construed and understood - is the responsibility of the IJ, not this court. See, e.g., Lopez Flores, 2026 WL 1179959, at *4 ("[M]ere disagreement with the IJ's reasonable alternative weighing of the evidence is insufficient to conclude that his bond hearing was constitutionally defective."); Makuraza v. Wesling, 2026 WL 1068066, at *3 ("Ultimately, [petitioner] disagrees with the

IJ's weighing of the evidence before her, which this court has no jurisdiction to review.").

Based upon the record before the court, it is plain that the IJ applied the proper standard of proof and imposed the burden on the government. It also evident that he considered all relevant evidence in making his decision. See Exhibit 1, Conventionally Filed Audio Recording (document no. 12-1). Finally, the court cannot conclude that, viewed as a whole, the evidence before the IJ was insufficient as a matter of law for a reasonable IJ to find flight risk by a preponderance of the evidence.

## Conclusion

Petitioner has not shown that the information recounted in the I-213 report was obtained in violation of the Fourth Amendment. And, even assuming such evidence was obtain in an unconstitutional manner, he has not explained how, in light of the Supreme Court's opinion in Lopez-Mendoza, the exclusionary rule might apply in a civil bond hearing to compel the exclusion of such evidence. Finaly, he has not shown the his bond hearing was constitutionally deficient or that he is currently being detained in violation of the Constitution.

For the foregoing reasons, the record before the court fails to support petitioner's assertion that his bond hearing was constitutionally deficient. Necessarily, then, his "Emergency Motion for Review of Bond Denial and for Immediate Habeas Relief" (**document no. 11**) is denied.

It appears that the court has afforded petitioner all the relief to which he is entitled, given the court's limited jurisdiction in this matter. Accordingly, the Clerk of Court shall close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

October 20, 2026

cc: Counsel of Record